IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRITNEY CASSANDRA TUCKER,

    Plaintiff,

vs.                                                                             1:21-cv-00735-LF-JMR

WELLS FARGO BANK,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint. Doc. 20. Plaintiff Britney Cassandra Tucker did not file a response, and the time for doing so has since passed. In the motion, Wells Fargo asks the Court to dismiss the amended complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Doc. 20 at 1. Upon consideration, the Court finds the motion well-taken and therefore will **GRANT** it. Plaintiff's amended complaint is hereby **DISMISSED WITH PREJUDICE**.

### I.   Background

This lawsuit stems from Ms. Tucker's employment with Wells Fargo. Ms. Tucker, proceeding *pro se*, commenced this lawsuit against Wells Fargo in state court, alleging that Wells Fargo violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 to 12117. *See* Doc. 1-1. Ms. Tucker raised two claims in her complaint: failure to accommodate and retaliation. *Id*.

After removing the lawsuit to this Court, Wells Fargo moved to dismiss Ms. Tucker's initial complaint. *See* Doc. 12. On March 15, 2022, the Court granted Wells Fargo's motion to

dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Doc. 16. The Court dismissed the complaint without prejudice and granted Ms. Tucker leave to file an amended complaint within thirty days. *Id.* at 10–11. The Court instructed Ms. Tucker that the amended complaint must address the issues noted in the order and "must allege enough facts to support each element of both her claims." *Id.* at 11.

On April 18, 2022, Ms. Tucker filed an amended complaint. *See* Doc. 17. As in her initial complaint, Ms. Tucker's amended complaint raises two claims under the ADA: failure to accommodate her disability and retaliation. *Id.* at 3–6. Ms. Tucker attached the following exhibits to her amended complaint: a copy of her initial complaint; her right to sue letter from the Equal Employment Opportunity Commission ("EEOC"); her charge of discrimination filed with the EEOC; Wells Fargo's position statement filed with the EEOC and Ms. Tucker's response; and a state court order awarding her unemployment benefits. *See* Doc. 17-1.

On May 9, 2022, Wells Fargo filed the motion that is presently before the Court, seeking dismissal of Ms. Tucker's amended complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. 20. Although Ms. Tucker informed Wells Fargo telephonically that she opposed the motion, she did not file a response to the motion. On July 28, 2022, Wells Fargo filed a notice of completion of briefing as to the motion. *See* Doc. 21.

**II.     The Amended Complaint**

In ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must accept as true all facts alleged in the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). It also must view these factual allegations in the light most favorable to the plaintiff. *See id.* Viewing the facts alleged in the amended complaint in this manner, the relevant facts are

as follows:

Ms. Tucker was employed by Wells Fargo as a personal banker since 2014.  Doc. 17 at 2.  Ms. Tucker suffers from post-traumatic stress disorder ("PTSD").  *Id.*  On January 30, 2020, she was approved for leave under the Family and Medical Leave Act ("FMLA") due to her PTSD.  *Id.*  She was scheduled to return from leave on April 30, 2020.  *Id.*

Ms. Tucker's doctor released her to return to work on her scheduled return date.  *Id.*  Ms. Tucker, however, "was struggling with returning to work due to the COVID-19 virus because she [had been] able to isolate at home since the outbreak began."  *Id.*  Ms. Tucker's doctor "recommend[ed] [she] request accommodations from Wells Fargo . . . to isolate at home to reduce the risk of exposure."  *Id.* at 4.  Therefore, on April 30, 2020, when Ms. Tucker contacted Wells Fargo human resources to report that her "doctor released [her] to be able to work," she inquired whether "an option was available that allow[ed] employees to keep their job while they isolate[d]" in order to reduce "the risk of exposure to COVID-19."  *Id.*

Human resources advised Ms. Tucker that her "branch manager Barbara Gonzales had the capacity to accommodate her disability by use of the time tracker code implemented by Wells Fargo . . . in response to the COVID-19 pandemic to protect employees."  *Id.* at 2.  Ms. Tucker alleges the COVID time tracker code "allow[ed] time away from work for employees who [were] high risk or ha[d] special circumstances that prompt[ed] the need to isolate due to the increased risk contracting the virus would have on their lives."  *Id.* at 4.  The COVID code was used on an employee's weekly time sheet "to receive pay for the standard number of hours an employee would have worked had they not been isolated."  *Id.*  "The timeframe or duration in which an employee would be able to use the COVID code was not exact[;] instead it was unique to each employee's specific need or circumstance due to the unknown progression of the virus."

3

*Id*. Ms. Tucker claims the use of the COVID code would have "allowed her to perform her essential job functions within the near future because" Wells Fargo "would eventually transition to working remotely" with personal bankers working from home as "phone bankers." *Id*. at 4.

Immediately after speaking to human resources, Ms. Tucker contacted her supervisor, Ms. Gonzales, to request an accommodation. *Id*. at 3. Ms. Tucker asked Ms. Gonzales if she could use the COVID code or if there were other accommodations available to her to help her retain employment. *Id*. Ms. Gonzales denied Ms. Tucker's request for an accommodation without providing an explanation. *Id*. Ms. Tucker told Ms. Gonzales that she would be "unable to go to work with out [sic] an accommodation," to which Ms. Gonzales responded, "Well[,] I guess you will have to resign then." *Id*. Ms. Tucker asked what she needed to do next, and Ms. Gonzales advised her to email her resignation "because it needed to be in writing." *Id*.

Ms. Tucker alleges Wells Fargo had policies and procedures to "properly handle accommodation requests so that the rights of disabled employees [were] not violated," and that Ms. Gonzales did not handle her request for an accommodation in accordance with this training. *Id*. Ms. Tucker further alleges that "other similarly situated employees were being accommodated by use of the [COVID] code," but Ms. Gonzales made no attempt to help Ms. Tucker "explore options for accommodation[] due to her disability" and "discriminated against [Ms. Tucker] due to her disability." *Id*. at 3, 5. Ms. Tucker claims the denial of her request for accommodations "was a direct violation of the ADA and Wells Fargo's policies and procedures." *Id*. at 3.

### III. Standard of Review

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v.*

*Collins*, 656 F.3d 1210, 1214 (10th Cir .2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While "'a court must accept as true all of the allegations contained in a complaint,'" this rule does not apply to legal conclusions.  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A] plaintiff must offer specific factual allegations to support each claim."  *Id*.  A complaint survives only if it "states a plausible claim for relief."  *Id*. (internal quotation and citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion."  *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).  "A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal."  *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (same); *see also* FED. R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").[1]  In determining whether to grant the motion, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff.  *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

The Court's ultimate duty is to "determine whether the complaint sufficiently alleges

---

[1] Under the Local Rules, "[e]xhibits are not attached to a pleading unless the documents attached form the basis for the action or defense." D.N.M.LR-Civ. 10.4.  However, this rule may be "waived by a Judge to avoid injustice." D.N.M.LR-Civ. 1.7.  Because plaintiff is proceeding pro se, in the interests of justice, and for the purposes of this motion only, the Court hereby waives Local Rule 10.4.

facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren,* 478 F.3d 1149, 1160 (10th Cir. 2007). Dismissal is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1162–63 (10th Cir. 2018) (claims properly dismissed under Rule 12(b)(6) because plaintiff failed to allege required elements of duty, materiality, and scienter as required by Private Securities Litigation Reform Act).

In reviewing a pro se complaint, the Court liberally construes the factual allegations. *See Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992). Nonetheless, a pro se plaintiff's pleadings are judged by the same legal standards that apply to all litigants, and a pro se plaintiff must abide by the applicable rules of court. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). The Court is not obligated to craft legal theories for a pro se plaintiff or to supply factual allegations to support the plaintiff's claims. *Hall,* 935 F.2d at 1110. Nor may the Court assume the role of advocate for pro se litigants. *Id*.

### IV. Analysis

Wells Fargo argues Ms. Tucker's amended complaint must be dismissed with prejudice because it fails to allege facts sufficient to support the elements of both ADA claims. *See* Doc. 20 at 1. Wells Fargo further asserts the amended complaint fails to address the deficiencies noted in the Court's prior order. *Id.* For the reasons explained below, the Court agrees with Wells Fargo and finds that the amended complaint fails to withstand scrutiny under Federal Rule of Civil Procedure 12(b)(6).

#### A. Failure to Accommodate Claim

To state a claim for failure to accommodate under the ADA, a plaintiff must allege facts

that show: "(1) "[s]he is disabled"; (2) "[s]he is otherwise qualified"; and (3) "[s]he requested a plausibly reasonable accommodation." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (internal quotation, alteration, and citation omitted). In the motion, Wells Fargo argues the amended complaint fails to set forth sufficient facts to support the first and third elements—that Ms. Tucker was disabled and that she requested a plausibly reasonable accommodation. *See* Doc. 20 at 4–6. The Court finds that Ms. Tucker has failed to state a claim for relief.

As to the first element, the ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . .; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Ms. Tucker alleges that she requested an accommodation to "reduce [her] risk of exposure" to COVID-19. *See* Doc. 20 at 5. As Wells Fargo points out, the amended complaint is devoid of any allegations that Ms. Tucker's alleged risk of exposure to COVID-19 constituted a disability within the meaning of the ADA. *Id.* The Court further is not aware of any authority supporting such a contention—i.e., that an employer violates the ADA if it fails to extend ADA protections to a possible future disability. *See, e.g.*, *Hice v. Mazzella Lifting Techs., Inc.*, No. 2:21-cv-281, 2022 WL 636640, at *7 (E.D. Va. Mar. 4, 2022) ("[P]ossible future exposure to COVID-19 does not constitute an impairment under the ADA."); *Parker v. Cenlar FSB*, No. 20-cv-02175, 2021 WL 22828, at *6 (E.D. Pa. Jan. 4, 2021) (finding that "possible exposure to COVID-19" is not an impairment under the ADA because it "is not a physical or mental impairment that substantially limits one or more major life activities") (internal citation and quotation marks omitted); *Gallo v. Washington Nationals Baseball Club, LLC*, No. 22-cv-01092, 2023 WL 2455678, at *4 (D.D.C. Mar. 10, 2023) ("The 'regarded as having' prong of the ADA's definition of disability "does not cover [a] case where an employer perceives a person to

be presently healthy with only a potential to become ill and disabled in the future.") (quoting *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019) (holding, in the context of a case involving an employee who had a potential risk of contracting Ebola virus during future foreign travel, that "the disability definition in the ADA does not cover this case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future")). The Court therefore concludes that the amended complaint fails to allege sufficient facts as to the first element of Ms. Tucker's failure to accommodate claim under the ADA.

Turning to the third element, the Court explained in its prior order that paid time away from work can be a reasonable accommodation in certain situations. *See* Doc. 16 at 6–7. The Court, however, determined that Ms. Tucker's initial complaint did not contain enough facts to ascertain "either the exact nature of [Ms. Tucker's] proposed accommodation, or the duration of her proposed 'paid time away'." *Id.* at 7. The Court advised Ms. Tucker that she could remedy this shortcoming by "filing an amended complaint containing more facts about her proposed reasonable accommodation, including the duration of her proposed time off." *Id.* The amended complaint does not cure the deficiencies previously identified by the Court. Although Ms. Tucker alleges the duration the COVID code could be used was "unique to each employee's specific need or circumstance due to the unknown progression of the virus," Doc. 17 at 4, the amended complaint includes no facts identifying the specific duration of time for which she sought paid time off. The amended complaint continues to include vague assertions regarding the parameters of her accommodation request. It also is not clear whether Ms. Tucker's requested accommodation was paid time away from work or remote work. The Court thus finds the amended complaint does not allege sufficient facts to support the third element that she

requested a "plausibly reasonable accommodation." For these reasons, the Court will grant Wells Fargo's motion to dismiss Ms. Tucker's failure to accommodate claim.

### B. Retaliation Claim

To state a claim for retaliation under the ADA, a plaintiff must allege facts that show: (1) that she engaged in an activity protected by the statute; (2) that she was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) that there was a causal connection between the protected activity and the adverse action. *Selenke v. Med. Imaging of Colorado,* 248 F.3d 1249, 1264 (10th Cir. 2001) (internal citation omitted). Wells Fargo alleges that Ms. Tucker failed to allege sufficient facts in her amended complaint to show the second and third elements of a retaliation claim. The Court agrees.

Ms. Tucker clarifies in her amended complaint that the adverse employment action that forms the basis of her retaliation claim was that she was constructively discharged. *See* Doc. 17 at 5. However, beyond this conclusory assertion, Ms. Tucker does not allege any specific facts to show constructive discharge. Although she summarily asserts that she "was unable to return to work with out [sic] accommodations," Doc. 17 at 5, she does not raise any specific factual allegations regarding her working conditions. Nor does she allege that her working conditions would have been so intolerable that she had no choice but to resign. *See Yearous v. Niobrara Cty. Mem'l Hosp. By & Through Bd. of Trustees*, 128 F.3d 1351, 1356 (10th Cir. 1997) ("Constructive discharge occurs when a reasonable person in the employee's position would view the working conditions as intolerable. That is to say the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign.") (internal quotations, citations, and alterations omitted). Likewise, as to the third element, the Court agrees with Wells Fargo that Ms. Tucker has not alleged any facts to support a causal

connection between a protected activity and her constructive discharge. *See* Doc. 20 at 8. The Court therefore will grant Wells Fargo's motion to dismiss Ms. Tucker's retaliation claim.

## V.     Conclusion

For the reasons set forth above, the Court concludes that Ms. Tucker's amended complaint fails to state a claim for failure to accommodate under the ADA, or a claim for retaliation under the ADA. The Court therefore **GRANTS** Wells Fargo's motion to dismiss (Doc. 20) and dismisses Ms. Tucker's complaint with prejudice.

**IT IS SO ORDERED**.

_____
Laura Fashing
United States Magistrate Judge
 Presiding by Consent